IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

NOEL P. MILLER,                        )
                                       )
                    Plaintiff,         )        No. 2:11-cv-03026-DCN
                                       )
        vs.                            )
                                       )        **ORDER**
UNITED STATES OF AMERICA,              )
                                       )
                    Defendant.         )
 _____)

This matter is before the court on a motion for summary judgment brought by the United States ("the government"). For the reasons set forth below, the court grants the government's motion. The court also, *sua sponte*, reconsiders and grants attorney O. Fayrell Furr's previous motion to withdraw from his representation of plaintiff Noel P. Miller.

## I.  BACKGROUND

On November 7, 2011, plaintiff Noel Miller filed a Federal Tort Claims Act ("FTCA") complaint against the United States. The complaint alleges that surgeons employed by the Ralph H. Johnson VA Medical Center ("the VA") negligently performed two spinal surgeries on Miller in April and June 2007. Compl. ¶¶ 14-17, 23-24. Miller alleged that the neurosurgeons who performed these spinal surgeries – Drs. Abhay Varma and Tanya Quinn[1] – departed from the prevailing standards of care and caused Miller "to undergo additional surgeries, pain and suffering, mental anguish, . . .

_____

[1] At the time of Miller's surgeries, Tanya Quinn was known as Tanya Jones. Because this physician now uses the last name Quinn, Decl. of Tanya Quinn ¶ 2, the court will refer to her as Dr. Quinn.

1

disability, and other non-economic damages."[2]  Compl. ¶¶ 24-25.  Miller alleged that

Drs. Varma and Quinn are federal employees and that the government is liable under the

FTCA for their negligent acts.  Compl. ¶ 2, 7-10.

On October 2, 2012.

Because Dr. Varma is an independent contractor for the VA – and not a federal employee

– the government cannot be liable under the FTCA for Dr. Varma's alleged negligence.

For this reason, the court dismissed the portions of the complaint that alleged wrongdoing

by Dr. Varma.  Order, Dec. 21, 2012.  The court refused, however, to dismiss the portions

of the complaint that relate to Dr. Quinn because, as a VA surgical resident, Dr. Quinn

was a federal employee at the time that she participated in Miller's surgery.  Id. at 9.

On February 8, 2013, the government filed the instant motion for summary

judgment.  The matter has been fully briefed and is ripe for the court's review.

## II.   STANDARD OF REVIEW

Summary judgment shall be granted "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine dispute as to

any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine

---

[2] Miller's complaint also alleges that vascular surgeons James P. Stokes and Jacob G. Robison acted negligently during the course of Miller's two surgeries.  Compl. ¶¶ 16-17, 20.  At a hearing held on December 6, 2012, Miller's counsel admitted that Drs. Stokes and Robison had not acted negligently and that Miller needed to remove those surgeons' names from his complaint.  Hr'g Tr. 6:1-13.  Miller has not so amended his complaint.  Nevertheless, because the parties agree that Drs. Stokes and Robison committed no wrongdoing, and because the court has already dismissed the portions of Miller's complaint that relate to Dr. Varma, this order addresses only the portions of the complaint that relate to Dr. Quinn's alleged negligence.

issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. <u>Anderson</u>, 477 U.S. at 255.

### III. DISCUSSION

#### A. The Government's Motion for Summary Judgment

The government asserts that summary judgment is appropriate because there is "no evidence upon which a factfinder could reasonably find that Dr. Quinn did anything of substance in either surgery, much less that whatever she 'might' have done deviated from accepted medical standards." Def.'s Reply in Supp. of Mot. for Summ. J. 3. In support of its argument, the government provides the deposition testimony of Dr. Varma and an affidavit signed by Dr. Quinn.

In his testimony, Dr. Varma repeatedly states that, while he does not remember the specifics of Miller's surgeries, he would have performed most of the procedures. See, e.g., Test. of Abhay Varma 11:2-4, May 22, 2012 (regarding Miller's April 2007 surgery: "I can't recall offhand. But I think I did most of it – all – probably all of it. [Dr. Quinn] was just helping."); Varma Test. 22:3-6 ("I was mainly doing the operation, so she would be helping me by holding the suction or by retracting the structure out of the way as we try to complete the procedure."); Varma Test. 31:6-10 (regarding Miller's June 2007 revision surgery: "Again, because it was a complicated surgery, I can say most of it was done by me. I can't remember exactly what's – what exact steps were done by her. But because it's a complicated surgery, I would have done most of it myself.").

Dr. Varma's deposition also addressed whether Dr. Quinn was involved in placing the screws into the hardware used in Miller's spinal surgeries.

> A.  She, again, may have done – helping me, holding the suction or holding the retractor or clearing the field for me while I was operating.
>
> Q.  Did she do any taking the screws out, putting the screws in, things like that?
>
> A.  I can't remember. I don't remember.
>
> Q.  Is it possible that she did?
>
> A.  I can't say. It's a long time ago.
>
> Q.  How about in the first surgery, is it possible she did some of that on the first surgery?
>
> A.  I can't say. She might have, because I let my residents put in screws once we have cleared the field totally and we were ready to put in the screws. I tell them where to go, how to go, which direction to go. So she might have done some. But how much she did in the first surgery or second surgery, right offhand, I can't say. But going by my general approach, if it's a complicated procedure, I generally like to do it all by myself.

Varma Test. 31:6-32:5.

> Dr. Quinn's affidavit bolsters Dr. Varma's deposition testimony:

> While I do not specifically recall the surgeries in question, my role as a resident in the surgeries supervised by Dr. Varma while I was a resident was as described by Dr. Varma in his deposition.  During my surgical experience as a resident under Dr. Varma, I was never left in the operating room alone to perform any critical portions of any surgery (including dissection, exposure, decompression, instrumentation, anthrodesis).  Any other portion of the surgery [in] which I would have participated would have been under the direct supervision, direction and control of Dr. Varma.  I support Dr. Varma's description of the surgeries in his deposition.

Quinn Aff. ¶ 2, Jan. 31, 2013.

Miller argues that the revelation that Dr. Quinn "may have placed some screws" during Miller's surgeries is sufficient evidence to "hold the federal government responsible under the Federal Tort Claims Act for the negligence of Dr. [Quinn] . . . ." Pl.'s Mem. in Opp. to Mot. for Summ. J. 5.  This is a flawed interpretation of the evidence in this case.

Dr. Varma's testimony is that he does not remember whether Dr. Quinn placed any screws during one of the surgeries in question, but, in general, he sometimes allows residents to do so under his supervision.  Dr. Quinn, likewise, recalls neither Miller's surgeries nor the role she played in them.  These hazy recollections and expressions of uncertainty do not amount to evidence that Dr. Quinn acted negligently during Miller's surgeries.  Rather, they are statements that do not shed any light on Dr. Quinn's actions. The parties and the court simply do not know whether Dr. Quinn acted negligently, or even whether she participated in Miller's surgeries in any meaningful way.

Because Miller has presented no evidence to support his claims, this case cannot survive the level of scrutiny required by the Supreme Court in <u>Celotex</u>. Summary judgment must be granted in favor of the government.

**B.  Attorney O. Fayrell Furr's Motion to Withdraw Representation**

On February 15, 2013, Mr. Furr filed a motion to withdraw as counsel for Miller. Mot. to Withdraw, Feb. 15, 2013, ECF No. 29. The court denied that motion without prejudice on March 13, 2013, ordered Mr. Furr to respond on Miller's behalf to the government's summary judgment motion, and stated that it would "reconsider Mr. Furr's motion to be relieved as counsel when it issues its order on the government's summary judgment motion." Order at 2, Mar. 13, 2013, ECF No. 37. Mr. Furr fully complied with the court's orders regarding his continued representation of Miller.

The local rules of this district state that "No attorney whose appearance has been entered shall withdraw his or her appearance or have it stricken from the record except with leave of the Court." Local Civil Rule 83.1.07 DSC. Now that the court has disposed of the government's summary judgment motion, it considers anew and grants Mr. Furr's motion to withdraw as Miller's attorney.[3]

### IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** summary judgment in favor of defendant. The court also **GRANTS** Attorney Furr's motion to withdraw as Miller's attorney.

**AND IT IS SO ORDERED**.

---

[3] Because the court grants Mr. Furr's request to withdraw, Miller is, at the moment, effectively *pro se*. The court notes that Miller has the right to appeal this decision to the Fourth Circuit Court of Appeals within 60 days from the date of this order. <u>See</u> Fed. R. App. P. 4(b).

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 13, 2013**
**Charleston, South Carolina**